# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) STARR SURPLUS LINES INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>(1) CUSHING HOSPITALITY, LLC,<br><br>      Defendant. | Case No.   CIV-20-651-F |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Starr Surplus Lines Insurance Company ("Starr") names as defendant Cushing Hospitality, LLC ("Cushing") and submits this Complaint for Declaratory Judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. In support of this Original Complaint, Starr respectfully shows:

## PARTIES

1.    Plaintiff Starr is a Texas corporation with its principal place of business in New York, New York.

2.    Defendant Cushing is an Oklahoma limited liability company with its principal place of business in Cushing, Oklahoma. Cushing can be served with process through its registered agent, Tejal Patel, at 4333 SW 15th Street, Oklahoma City, Oklahoma 73108.  Based on information and belief, the members of Defendant Cushing are Naresh Patel, Kalpana Patel, and Tejal Patel, all of whom are residents of Oklahoma.

**JURISDICTION AND VENUE**

3. The court has jurisdiction pursuant to 28 U.S.C. 1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. Venue is proper in the Western District of Oklahoma, Enid and Ponca City Division, pursuant to 28 U.S.C. 1391(b)(1)-(2), in that it is the judicial district in which the Defendant resides, and the underlying state court lawsuit to confirm an arbitration award giving rise to the claims at issue is in this district.

**THE ARBITRATION PROCEEDING AND STATE COURT LAWSUIT TO CONFIRM OF THE ARBITRATION AWARD**

5. This is a declaratory judgment action to determine whether Starr owes a duty to pay judgment creditor Defendant Cushing all or part of a monetary judgment Cushing obtained against Starr insured CMP Construction, Inc. ("CMP") in a construction defect arbitration that took place in Oklahoma.[1] Defendant Cushing is currently involved in litigation as a result of a construction of a hotel that it owns. The lawsuit is styled: Case No. CJ-20-8; *Cushing Hospitality, LLC v. CMP Construction, Inc., and Hiren Patel a/k/a Chico Patel, an individual.*; in the District Court of Payne County, Oklahoma on January 7, 2020 (attached as *Exhibit 1*). Cushing filed the Petition For Money Damages And To Confirm Arbitration Award And Reduce Same To Judgment (the "Underlying Lawsuit") in part to seek confirmation of an arbitration award (the

---

[1] Starr has not joined its insured CMP in this declaratory judgment action because CMP was dissolved in June 2017 and thus pursuant to 18 O.S. 1099, cannot be sued or bring suit.

2

"Arbitration Award") entered in its favor on November 1, 2019 against CMP and MG Pools ("MG"). CMP subsequently joined third party defendant MG in the Underlying Lawsuit seeking confirmation of the Arbitration Award.

6.      Pursuant to the Arbitration Award, which is attached as *Exhibit 2*, the arbitrator found that in August 2011, Defendant Cushing and CMP entered into a written contract for the construction of a Best Western hotel in Cushing, Oklahoma. CMP served as the general contractor for the construction of the hotel. The contract contained an arbitration provision for any disputes between Cushing and CMP arising from the construction of the hotel. The arbitrator found that following substantial completion of the hotel by CMP on November 2, 2012, and after issuance of the Certificate of Occupancy on December 2, 2012, Cushing observed distress in the main lobby/breakfast area in wall coverings, wrinkling of wall finishes, cracking of drywall, and perceptible heaving of the floor. Cushing also noticed floor height variation throughout the first floor, cracks in the floor in areas of exposed concrete and slab height variation around the pool. Cushing reported these issues to CMP in 2013 who, in turn, began investigating the situation pursuant to its warranty obligations in the contract.

7.      For a several year period, CMP was unable to resolve the problems with the hotel. CMP voluntarily dissolved as an ongoing concern, was no longer doing business after 2016, and thus ceased performing its warranty obligations to Cushing under the contract. In May 2017, Cushing filed a demand for arbitration through the AAA. Starr and CMP's other liability insurer, Century Surety Company, provided a defense to CMP in the arbitration proceeding. In July 2017, CMP joined the pool subcontractor MG in the

arbitration proceeding on the basis that the water leakage from the pool may have contributed to the alleged damages to the hotel. A significant plumbing leak in the pool was discovered in June 2018 and repaired in October 2018.

8. On November 1, 2019, the arbitrator rendered the Arbitration Award in favor of Cushing in the amount of $1,840,577.77. The arbitrator found that while the pool was a part of CMP's obligations, the installation of the pool and the lack of the proper installation of the swimming pool filler pipe causing tens of thousands of gallons of water to be released into the soil under the slab was, at a minimum, 95% of the cause of the water infiltration. The arbitrator determined that the other potential sources of moisture, such as rain, moisture accumulation in planter boxes, and others, would not have resulted in an amount of property damage to the hotel that had occurred.

9. In his Conclusions of Law, the arbitrator found that CMP breached express warranties under the contract. Specifically, he determined that where problems are discovered after substantial completion, the contract required CMP to correct them "within a reasonable time" after being given notice by Cushing. He determined that Cushing timely made a warranty claim under the contract and that, while CMP continuously attempted to find the root cause of the problem—that being water infiltration under the slab caused by the leaking pool—CMP did not complete its warranty work, in large part because CMP's President dissolved the company before the work was completed and is therefore liable to Cushing for breach of the warranty.

10. The arbitrator further found that the fact that the leaking pool piping was not discovered until after Cushing demanded arbitration made no difference and did not

somehow obviate the express provisions of the contract. He also determined that it also did not matter that CMP spent several years investigating the problems. Instead, all that mattered is that Cushing, after giving CMP a reasonable amount of time to figure out and fix the problems, timely filed an arbitration demand before the expiration of the time for making claims stated in the contract. Since CMP did not honor its warranty, the arbitrator determined that it must pay Cushing for the damages suffered.

11. On June 8, 2020, the court entered its Order and Judgment in the Underlying Lawsuit confirming the Arbitration Award in favor of Cushing in the amount of $1,856,107.65, which included Cushing's costs and attorney's fees. The court has not yet ruled on CMP's Motion to Confirm Arbitration Award and Reduce Same to Judgment Against MG.

## THE STARR POLICIES

12. Starr issued the following Commercial General Liability Policies to CMP: SLPG-GL01638-00, effective from September 20, 2012 to September 20, 2013 ("2012-2013 Policy") (attached as *Exhibit 3*); SLPG-GL01638-01, effective from September 20, 2013 to September 20, 2014 ("2013-2014 Policy") (attached as *Exhibit 4*); and SLPG-GL01638-02, effective from September 22, 2014 to September 22, 2015 ("2014-2015 Policy") (attached as *Exhibit 5*)[2] (collectively, the "Policies"). Each policy contains a $1,000,000 each occurrence limit. The Policies all provide as follows:

---

[2] The 2013-2014 Policy ended on September 20, 2013 and the 2014-2015 Policy incepted on September 22, 2014. Therefore, there is no coverage on September 21, 2014.

5

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of

      an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have known prior to the police period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee' authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**2.**   **Exclusions**

    This insurance does not apply to:

* * *

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonably attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## SECTION V – DEFINITIONS

**9.** "Insured contract" means:

* * *

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.

* * *

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

 **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

 **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

* * *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

\* \* \*

<u>**ENDORSEMENT**</u>

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**EXCLUSION-CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

A. This insurance does not apply to any damages because of or related to "bodily injury" or "property damage":

   1. Which first existed, or alleged to have first existed, prior to the inception date of this policy; or

   2. Which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

**3.** Which are caused, or are alleged to have been caused, by the same condition or construction defect which resulted in "bodily injury" or "property damage" which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

All other terms and conditions of this policy remain unchanged.

\*\*\*

## ENDORSEMENT[3]

THIS ENDORSEMENT CHANGES THE POLICY.  PLEAD READ IT CAREFULLY.

## EXCLUSION – PRIOR WORK

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

The following exclusion is added to SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions and SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, Paragraph 2. Exclusions:

This insurance does not apply to:

A. Any claim or "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" arising out of "your work" that is completed or abandoned prior to 9/20/2012

B. Paragraph 16.a.(2)(c) of SECTION V – DEFINITIONS is deleted in its entirety and replaced by the following:

---

[3] This Endorsement is in the 2012-2013 Policy only.

      When that part of the work done at a job site has been put to its intended use by any person or organization.

C.    As used in this endorsement "abandoned" means the failure to provide labor, materials or services for a period of ninety (90) days, despite the work set forth in the controlling construction project not being deemed complete by the Owner.

All other terms and conditions remain unchanged.

***

# ENDORSEMENT[4]

**THIS ENDORSEMENT CHANGES THE POLICY. PLEAD READ IT CAREFULLY.**

**EXCLUSION – PRIOR WORK**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
SCHEDULE

| Date: 9/22/2014 |
|---|

A.    The following exclusion is added under Paragraph **2., Exclusions of Section I – Coverage A — Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Prior Work**

    a.    Any claim or "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" arising out of "your work" that is completed or abandoned prior to the date shown in the Schedule above.

    b.    Paragraph **16.a.(2)(c)** of **Section V – Definitions** is deleted in its entirety and replaced by the following:

---

[4] This Endorsement is in the 2014-2015 Policy only.

>> When that part of the work done at a job site has been put to its intended use by any person or organization.
>
> c. As used in this endorsement "abandoned" means the failure to provide labor, materials, or services for a period of ninety (90) days, despite the work set forth in the controlling construction project not being deemed complete by the Owner.

B. All other terms and conditions of this policy remain unchanged.

***

<strong>THE STARR POLICIES DO NOT COVER THE ARBITRATION AWARD</strong>

13. As a judgment creditor of Starr's insured CMP, Defendant Cushing is entitled to seek recovery of any of the proceeds under the Starr Policies to the extent there is coverage for the Arbitration Award. Starr seeks a declaration from the Court that it owes no obligation to pay any portion of the Judgment in the Underlying Lawsuit confirming the Arbitration Award in favor of Cushing in the amount of $1,856,107.65.

14. Specifically, Starr seeks a declaration from the Court that any "property damage" was not caused by an "occurrence" as defined in the Policies. The arbitrator's finding that CMP intentionally breached contractual warranties by not making repairs following the voluntary dissolution of CMP is not an "occurrence" as defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

15. Alternatively, Starr seeks a declaration from the Court that the damages awarded by the arbitrator for breach of contractual warranties are excluded by Exclusion b. Contractual Liability, which excludes "property damage" for which CMP is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

16.     Alternatively, Starr seeks a declaration from the Court that the 2013-2014 and 2014-2015 Policies do not provide coverage for the Arbitration Award on the basis that the arbitrator determined that the "property damage" first occurred prior to the inception dates of the 2013-2014 and 2014-2015 Policies. Accordingly, the Continuous or Progressive Injury and Damage exclusions in those Policies bar coverage because the "property damage" first existed prior to the inception date of the 2013-2014 and 2014-2015 Policies, respectively.

17.     Alternatively, Starr seeks a declaration from the Court that the Prior Work Exclusions in the 2012-2013 and 2014-2015 Policies bar coverage for "property damage" arising from CMP's work that was completed prior to September 20, 2012, under the 2012-2013 Policy, and prior to September 22, 2014, under the 2014-2015 Policy.

18.     Alternatively, Starr seeks a declaration from the Court that to the extent it is determined that the Starr Policies do provide coverage for the Arbitration Award, that such coverage is limited to $1,000,000, which is the maximum limits applicable to such damages.

## CONCLUSION AND PRAYER

19.     Starr respectfully requests a judgment from this Court that Starr owes no obligation to pay any portion of the Judgment in the Underlying Lawsuit confirming the Arbitration Award in favor of Cushing in the amount of $1,856,107.65. Starr further asks for such other relief to which it may be entitled in law or in equity.

Respectfully submitted,

*/s/Kerry R. Lewis*
James D. Johnson OBA #12352
jjohnson@rhodesokla.com
Kerry R. Lewis, OBA #16519
klewis@rhodesokla.com
RHODES HIERONYMUS JONES TUCKER & GABLE, PLLC
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173; (918) 592-3390 [fax]


**ATTORNEYS FOR PLAINTIFF STARR SURPLUS LINES INSURANCE COMPANY**