## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STARR SURPLUS LINES )
INSURANCE COMPANY, )
                                                    )
    Plaintiff, )
                                                    )
-vs- )      Case No. CIV-20-0651-F
                                                    )
CUSHING HOSPITALITY, LLC, )
                                                    )
                                                    )
    Defendant. )

## ORDER

    This is a declaratory judgment action to determine whether Starr Surplus Lines Insurance Company (Starr) must pay judgment creditor Cushing Hospitality, LLC (Cushing) all or part of a money judgment which Cushing obtained against Starr's insured, CMP Construction, Inc. (CMP).  CMP was insured under the commercial general liability (CGL) policies in issue in this case (the Starr policies).  The judgment in question was entered on June 8, 2020, by The District Court of Payne County, State of Oklahoma, in CJ-20-8.  Doc. no. 32-2.  The judgment confirmed an arbitration award (doc. no. 32-2 at PL0008-PL0041) in favor of Cushing, which had been granted in an arbitration between claimant Cushing, as the owner of a Best Western Hotel in Cushing, Oklahoma, and CMP, the general contractor for the construction of the hotel.

    Cross-motions for summary judgment are before the court:  doc. no. 31 (Cushing's motion for summary judgment)[1] and doc. no. 32 (Starr's motion for

---

[1] Response brief, doc. no. 35.  No reply brief.

summary judgment).[2]  There are also some related motions to strike:  doc. nos. 36, 40, 42.  All of the motions have been fully briefed.  Starr seeks a declaration that it has no obligation to pay any portion of the judgment entered by the state court; Cushing asks the court to declare that Starr must pay the judgment in full.  For the reasons set out below, the court grants Starr's motion for summary judgment and denies Cushing's motion for summary judgment.

<u>The Starr Policies</u>

The CGL policies were issued by Starr to policyholder CMP for three periods: September 20, 2012 through September 20, 2013 (doc. no. 32-6); September 20, 2013 through September 20, 2014 (doc. no. 32-7); and September 22, 2014 through September 22, 2015 (doc. no. 32-8).  To the extent they are pertinent to this order, the policies are identical.  Accordingly, when this order quotes policy language it usually cites only the 2012-2013 policy.

<u>Fact-Findings</u>

In August of 2011, Cushing and CMP entered into a contract for the construction of a Best Western Hotel in Cushing, Oklahoma.  CMP served as the general contractor.  Doc. no. 32-2, ¶ 1 (arbitration award); doc. nos. 31-1 and 31-2 (construction contract).[3]

Per the construction contract, CMP warranted that "the Work will conform to the requirements of the Contract Documents and will be free from defects…."  Doc. no. 31-2, § 3.5.  The contract further provided that if any of the work was not in accordance with the requirements of the contract documents, then CMP "shall correct it promptly after receipt of written notice…."  *Id.* at §12.2.2.1.  CMP was

---

[2] Response brief, doc. no. 34.  Reply brief, doc. no. 39.

[3] The parties to the construction contract entered into a standard form of agreement AIA Document A101-2007 (doc. no. 31-1), which incorporates AIA Document A201-2007 (doc. no. 31-2) setting out general conditions.

obligated to corrects defects in its work which were reported within one year from substantial completion.  *Id*.  CMP also agreed to indemnify Cushing from losses arising from property damage due to negligence of CMP or its subcontractors.  *Id*. at § 3.18.  These and other contract provisions are quoted or cited in the arbitration award. *See generally,* doc. no. 32-2, ¶¶ 4, 45-47, 48.

In July of 2012, CMP entered into a written subcontract with MG Pools, LLC, to install an indoor swimming pool at the hotel.  *Id*. at ¶ 2.

Construction of the hotel was substantially complete by November 2, 2012, and a certificate of occupancy was issued on December 2, 2012.  *Id*. at ¶ 5.

After the issuance of the certificate of occupancy, one of Cushing's owners observed that interior drywall wallcoverings and floor-finishes were cracking, and that the first-floor slab was being pushed upward creating a dome-like effect generally in the center of each room on the first floor.  These problems had worsened over time.  *Id*.

These problems were verbally brought to the attention of Chico Patel, the owner of CMP.  *Id.* at ¶ 6.

On November 24, 2013, Chetan Patel with RK Patel Designing & Planning, acting on behalf of Cushing, brought the issue to the attention of CMP (Chico Patel, owner of CMP) formally and in writing.  By that time, Chetan Patel had theorized there was moisture intrusion coming from somewhere, causing the slab to move.  *Id*.

Following receipt of the written notice, CMP made efforts to determine the source of the problem.  For example, CMP hired an engineering service company to investigate the problem.  The engineering company hired a geotechnical engineer who prepared a report issued in February of 2014.  *Id*. at ¶ 7.  The report found that due to the influx of water from a variety of possible sources, water intrusion was causing the slab to heave upward.  *Id*. at ¶ 8.

Even before the geotechnical report was issued, there had been concerns about the pool as a possible source of water intrusion.  *Id*. at ¶ 9.  For example, there had been comments by hotel staff that they were constantly having to refill the pool because the water was continually low.  *Id*.  And in January of 2013, CMP's supervisor on the hotel job had checked with the city about the city's inspection of the pool and was informed the pool had passed its inspections.  *Id*.

CMP spent $20,000 or more trying to fix the problem, and CMP's owner continuously attempted to identify the source of the problem during this period.  *Id*. at ¶ 11.  CMP was invoiced for $1,685.00, representing costs to remove and replace exterior drain systems to try to solve the water problem.  *Id*.  At the arbitration, CMP contended the invoice shows it tried to stop the water intrusion through at least July of 2015.  *Id*.  CMP also had the lines to the pool pressure-tested and found no leaks coming from the pool.  Nevertheless, the pool continued to lose water and the hotel continued to have problems.  *Id*. at ¶12.

Sometime in July or August of 2016, Cushing hired an engineering firm to determine the cause or causes of distress to the building due to apparent foundation movement.  This engineering firm issued two reports, one in 2016 and one in 2018.  Neither report identified the source of the water with any certainty.  *Id*. at ¶¶ 13, 16.

There was "little or no testimony" at the arbitration about any work being done at the hotel site in 2016 and 2017 to address the hotel's condition.  *Id*. at ¶ 17.  The arbitrator found "This was likely as a result of the admission by Chico Patel that CMP had been dissolved as a corporate entity and was no longer doing business after 2016."  *Id*.

On June 30, 2017, CMP, an Oklahoma corporation, was dissolved.  Doc. no. 31-21.[4]

The dissolution occurred approximately six weeks after the demand for arbitration had been made by Cushing on May 18, 2017.  Doc. no. 32-2 at ¶ 17.

On June 27, 2018, a pool leak was finally located by American Leak Detection service.  *Id*. at ¶ 30.

On October 17, 2018, the leak was repaired.  *Id*. at ¶ 31.

On November 26, 2018, MG Pools was added back in as a party to the arbitration.  Doc. no. 34-4 (granting motion to reconsider and ordering MG Pools rejoined).[5]  MG Pools did not appear at the arbitration and did not defend itself.  Doc. no. 32-2, ¶ 59.

On November 1, 2019, the arbitrator issued his award, which includes a detailed report.  *Id*. at PL0026 (date signed).

In addition to the facts set out to this point in this order, the arbitration report found that a leak from the pool's filler pipe had caused about 7,500 cubic feet of water to be released into the soil under the hotel slab, per year.  This amounted to approximately 55,000 gallons of water released into the subsurface soil per year— enough to be the primary, if not the sole, source of the soil saturation.  *Id*. at ¶ 31.

The arbitrator determined that the pool was part of CMP's obligations.  He determined that the installation of the pool and the lack of proper installation of the pool's filler pipe had caused tens of thousands of gallons of water to be released into the soil under the slab and was, at a minimum, 95% of the cause of the water infiltration.  The arbitrator identified other potential sources of moisture (5%) as

---

[4] Title 18 O.S. § 1099 provides that a dissolved corporation shall be continued, for at least three years from the date of dissolution, for the purposes of, among other things, enabling the corporation to gradually settle and close its business, and to discharge its liabilities.

[5] MG Pools was rejoined, having been dismissed before the pool leak was discovered.

rain, moisture accumulation in the planter boxes and other sources.  He found that these potential sources of moisture would not have resulted in the amount of property damage to the hotel that had occurred.  *Id*. at ¶ 33.

The matters described below are covered in the "conclusions of law" portion of the arbitration award and report.

Under the heading "Breach of Warranty," the arbitrator concluded:  "It … doesn't matter that CMP spent several years investigating the problems.  All that matters is that Cushing, after giving CMP a reasonable amount of time to figure out and fix the problems, timely filed an arbitration demand….  <u>Since CMP did not honor its warranty, it must now pay Cushing for the damages suffered</u>."  *Id*. at ¶ 52 (emphasis added).

The arbitrator noted CMP's contention that "since Cushing brought a claim that sounds in negligence directly against MG Pools, the issue is not whether CMP is liable for breach of the Agreement[<sup>6</sup>] but rather that CMP is only severally liable for any negligence of MG Pools."  Addressing this contention, the arbitrator stated as follows. "<u>Proof of negligence is unnecessary to establish liability for breach of warranty.  [Citation omitted.]  In short, while the negligence of MG Pools and CMP may very well have caused the problem, which [sic] does not change the remedies available to Cushing under the Agreement</u>."  *Id*. at ¶ 53 (emphasis added).

In addition, "The Arbitrator finds that Cushing timely made a warranty claim under the Agreement and that, <u>while CMP continuously attempted to find the root cause of the problem—that being water infiltration under the slab—CMP did not complete its warranty work, in large part because Chico Patel dissolved the company [CMP] before the work was completed and is therefore liable to Cushing for breach of warranty</u>."  *Id*. at ¶ 54 (emphasis added).

---

<sup>6</sup> The "Agreement" is the construction contract.

Based on the foregoing, this court finds that the sole basis of CMP's liability, as found by the arbitrator, was CMP's breach of warranty.

In the part of the arbitration report that addressed the arbitrator's conclusions regarding MG Pools, the arbitrator noted CMP's allegation that MG Pools was liable to CMP either for indemnification under the subcontract or on the ground that MG Pools was negligent in the performance of the construction of the pool. *Id*. at ¶58. The arbitrator found that although MG Pools did not appear at the hearing, "there was sufficient evidence…to establish that MG Pools' failure to properly construct the pool was the single most likely cause that led to the water intrusion that resulted in damages to the Hotel." On that basis, the arbitrator granted CMP's request for an award holding MG Pools responsible for 95% of the damages assessed against CMP. *Id*. at ¶ 59.

The arbitrator found that Cushing was the prevailing party. *Id*. at ¶61. Cushing was awarded damages in the amount of $1,840,577.77. *Id*. at ¶ 62. That amount was largely based on costs to repair the hotel. *Id*.

On January 7, 2020, Cushing filed a petition in state court asking that court to award Cushing money damages, confirm the arbitration award and reduce same to judgment. Doc. no. 32-1.

On June 8, 2020, the state court confirmed the arbitration award. It entered judgment in favor of Cushing and against CMP in the amount of $1,856,107.65. Doc. no. 32-2 at PL0006-PL0007. This amount included costs and fees incurred in the district court proceedings.

## Summary Judgment Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  <u>United States v. Agri Services, Inc.</u>, 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

The Motions to Strike

*Doc. no. 36*

Starr asks the court to strike doc. no. 31-11 (Cushing's exhibit 11), arguing this exhibit is not authenticated, includes inadmissible hearsay to the extent it is offered to prove when certain property damage occurred, and contradicts the arbitrator's finding that the property damage at the hotel began as early as late-2012. In response, Cushing offers a substitute exhibit which includes an affidavit intended to authenticate the challenged exhibit.  Cushing asks the court to replace the original exhibit (doc. no. 31-11) with the substitute exhibit (doc. no. 38-1) and to admit the substitute exhibit.  As for Starr's other objections to the exhibit, Cushing argues that the challenged exhibit is not offered for the proof of the matter asserted.  Cushing states that the exhibit is only offered to show that Starr had begun investigating the claim and that Starr was on notice the hotel was reporting property damage.

Assuming the challenged exhibit is properly authenticated by the affidavit which has now been submitted, and considering the challenged exhibit for the purposes identified by Cushing, the exhibit has no impact on the result stated in this order.  The supplemented exhibit will be admitted over Starr's objections.  As neither

8

the challenged exhibit nor the supplemented exhibit has any impact on this order, the motion to strike will be denied as moot.

### *Doc. no. 40*

Next, Starr asks the court to strike doc. nos. 34-5, 34-6 and 34-7 (exhibits 5, 6 and 7 attached to Cushing's brief filed in response to Starr's motion for summary judgment).  Starr argues that these exhibits are not properly authenticated and include inadmissible hearsay. Starr also argues that doc. no. 34-5 violates the best evidence rule.  In response, Cushing submits affidavits along with the challenged exhibits, which are intended to authenticate the challenged exhibits. Doc. no. 47-1, 47-2.  Cushing asks the court to admit the affidavits as supplements to the challenged exhibits, which the court does.  In addition, Cushing argues that the challenged documents are computer-generated documents, or screenshots of self-generated computer data results from a data-base query, and are not hearsay. Cushing also argues that doc. no. 34-5 does not violate the best evidence rule.  Starr's reply brief disputes Cushing's characterization of these documents and their admissibility.

Assuming the challenged exhibits are properly authenticated by the supplemental affidavits, and assuming the challenged exhibits are admissible for the truth of the matters they assert, they do not impact the result stated in this order.  (In the portion of this order that addresses choice of law, the court considers and rejects Cushing's argument related to doc. no. 34-5.)  The supplemental affidavits and supplemental exhibits will be admitted over Starr's objections.  As neither the challenged exhibits nor the supplemental exhibits has any impact on this order, the motion to strike will be denied as moot.

### *Doc. no. 42*

Cushing moves to strike Starr's reply brief (doc. no. 39) filed in support of Starr's motion for summary judgment.  Cushing contends the reply brief merely restates old arguments.  Starr defends its reply brief as an effort to respond to

arguments made in Cushing's response brief.  The reply brief does more than restate old arguments.  Cushing's motion to strike Starr's reply brief will be denied.

Choice of Law

Turning to the arguments made in the cross-motions for summary judgment, the first question is which state's law applies to interpret the Starr policies.  Starr argues Mississippi law applies.  Cushing argues for Oklahoma law.

In a diversity action such as this one, the court applies the substantive law of the forum state.  Cohen-Esrey Real Estate Services, Inc. v. Twin City Fire Insurance Co., 636 F.3d 1300, 1302 (10th Cir. 2011).  Where there is a conflict of laws in a contract action, Oklahoma interprets a contract according to the law of the place where the contract is to be performed.  Melton Truck Lines, Inc. v. Indemnity Ins. Co. of North America, 2005 WL 8175530, *2 (N.D. Okla. November 3, 2005), unpublished.  When the contract does not indicate the place of performance, the law of the place where the contract is made governs its interpretation.  Id.  This rule is well-settled under Oklahoma law and is codified at 15 O.S. 2011 § 162.  Id.

When an insurance contract does not indicate the place of performance, the law of the state in which the insurance contract is delivered is deemed to be the place where the contract is made and, therefore, the law of that state governs interpretation of the contract.  Id.  Delivery of the instrument is its completion; thus, where an instrument is signed in one state and delivered in another, the law of the latter governs since the contract is made in the latter state.  Id., quoting Oklahoma authorities.

Applying the above rules, Mississippi law applies to govern the interpretation of the Starr policies.  The Starr policies do not state a place of performance.  Accordingly, the court looks to the law of the state in which the policies were delivered.  The policies were issued by Starr to CMP in Mississippi and delivered to CMP in Mississippi.  This is shown by the "Named Insured and Mailing Address"

10

information on the policies' declaration pages.  Doc. no. 32-6 at PL0057; doc. no. 32-7 at PL0141; doc. no. 32-8 at PL0228.  In addition, as shown on other declaration pages, the "location of all premises you [CMP] own, rent or occupy" lists only a Mississippi address for CMP.  Doc. no. 32-6 at PL0074; doc. no. 32-7 at PL0158; doc. no. 32-8 at PL0243.  As the Starr policies were delivered in Mississippi they are deemed to have been made in Mississippi, and Mississippi law applies.[7]

Cushing relies on <u>Bohannan</u> to urge an exception to the above rule.  But the exception only applies in motor vehicle cases, as made clear in <u>Bohannan</u>, 820 P.2d 787, 797.  *And see*, <u>Bernal v. Charter County Mutual Insurance Co.</u>, 209 P.3d 309, 315-16 (Okla. 2009) (<u>Bohannan</u> carved out an exception, in motor vehicle cases, to the *lex loci contractus* rule).

Cushing also argues that a binder was effective on September 20, 2012 for the 2012-2013 policy.  Cushing contends this shows delivery of the policies was not required before the policies were effective, and that the place where the contracts were made is not clear because the contracts were made (delivered) electronically.[8] In support of its binder argument, Cushing relies on doc. no. 34-5, a print-out which Cushing says shows when the binder was effective.  Presuming that is, in fact, what the print-out shows, the print-out makes no difference to the outcome because a binder is a contract for temporary insurance. <u>Coastal Hardware & Rental Co., LLC v. Certain Underwriters at Lloyds, London</u>, 120 So.3d 1017, 1023 (Miss. Ct. App. 2013).[9]  Here, it is the Starr policies that are sued on, not the binder, which expired

---

[7] While the policies do not specify a place of performance, they include a Mississippi endorsement. Doc. no. 32-6 at PL0062;  doc. no. 32-7 at PL0146;  doc. no. 32-8 at PL0233. Thus, coverage in Mississippi was a consideration in the drafting of the policies.

[8] Cushing submits no evidence to show the policies were delivered electronically.

[9] Oklahoma law is the same.  <u>Behar v. Certain Underwriters at Lloyds, London</u>, 554 F.Supp.2d 1262, 1268 (W.D. Okla. 2008) (binder only effective until the policy issues).

when the 2012-2013 policy was issued.  Accordingly, even considering this exhibit for the truth of the matter which Cushing says it shows,[10] the court rejects Cushing's binder argument.  The effective date of the binder is not a reason to apply Oklahoma law rather than Mississippi law.

In summary, applying Oklahoma's choice of law rules, the court concludes that the Starr policies were made in Mississippi and should be interpreted under Mississippi law.[11]  *See generally*, Progressive Cas. Ins. Co. v. Engemann, 268 F.3d 985, 987 (10th Cir. 2001) (although incidents occurred in Oklahoma, court relied on Oklahoma choice of law rules, which held that New Jersey law applied to insurance coverage dispute).

<u>General Principles of Insurance Law</u>

The court will set out some general principles of Mississippi insurance law which are pertinent to this action.[12]  Before doing so, it notes Starr's concession that Cushing, as judgment creditor of Starr's insured (CMP), has standing to seek recovery of any covered damages under the policies.  Doc. no. 32, p. 1, n.1. Judgment creditors enjoy no greater rights than the insured party; all defenses available to the insurer against its insured are available against third-party judgment

---

[10] Earlier in this order, the court stated it would admit the exhibit and deny (as moot) Starr's motion to strike it.

[11] As discussed later, it is not clear whether the result reached in this order would be different if Oklahoma law were applied.

[12] These general principles are also recognized under Oklahoma law.  *See*, *e.g.,* Pittman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291 1298 (10th Cir. 2000) (insured has the burden of showing covered loss, while insurer has the burden of showing that a loss falls within an exclusionary clause); Mount Vernon Fire Insurance Co. v. Okmulgee Inn Venture, LLC, 451 Fed. Appx. 745, 749 (10th Cir. 2011) ("The duty to defend is separate from, and broader than, the duty to indemnify.…  The duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage."), unpublished.

creditors.  Jones v. Southern Marine & Aviation Underwriters, Inc., 739 F. Supp. 315, 318 (S.D. Miss. 1988).

Under Mississippi law, the burden is on the policyholder to prove coverage exists for a peril under an insurance policy.  Leonard v. Nationwide Mutual Insurance Co., 499 F.3d 419, 429 (5th Cir. 2007) (Mississippi law).  Thus, as applied here, Cushing, as judgment creditor of policyholder CMP, has the burden to prove that the "coverages" language in the policies is satisfied.  On the other hand, the burden is on the insurer, Starr, to prove that a particular peril falls within a policy exclusion. *Id*.

Estate of Bradley ex rel. Sample v. Royal Surplus Lines Insurance Co., Inc., 647 F.3d 524, 529 (5th Cir. 2011), sets out Mississippi law regarding indemnity (or, in some instances, makes an "Erie guess" as to how the Mississippi Supreme Court would decide an unresolved issue).  Bradley states that "Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Id*., citations omitted.  "When an insurer is sued, an insurer's duty to defend is determined solely by comparing the facts alleged in the complaint with the terms of the policy." *Id*.  In contrast, the "duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established." *Id*. at 531, citations omitted.  "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id*., citations omitted.

Furthermore, "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance:  the insurer has a duty to defend when there is any basis for potential liability under the policy."  Rogers v. Allstate Insurance Co., 938 So.2d 871, 875 (Miss. Ct. App. 2006), quoting Merchants Co. v. American

Motorists Insurance Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992), (emphasis added). It follows that where there is no duty to defend there can be no duty to indemnify. *See*, Isom v. Valley Forge Insurance Co., 716 Fed. Appx. 280, 287-88 (5th Cir. 2017) (because no duty to defend, no duty to indemnify, applying Mississippi law), unpublished.

Starr's Argument for No Coverage Based on No "Occurrence"

Under Section I-1.b.(1) of the Policies

Starr's first argument in support of its position that it has no obligation to indemnify CMP and thus no obligation to pay the judgment obtained by Cushing against CMP, is made under the "coverages" portion of the policies, specifically, section I-1.b.(1).  This provision states:

> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

Doc. no. 32-6 at PL0075.

Per the "definitions" section in the policies:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id*. at PL0088.

"Accident" is not defined in the policies, but the Mississippi Supreme Court equates an accident with an inadvertent act.  *See*, Architex Association, Inc. v Scottsdale Ins. Co., 27 So.3d 1148 (Miss. 2010) ("Only when 'property damage' is proximately caused by an accident (an inadvertent act) does an 'occurrence,' as

14

defined by the policy, trigger coverage." *Id*. at 1161 (parentheses in original).[13] Architex notes that in earlier, distinguishable cases, the Mississippi Supreme Court addressed the meaning of an "accident" and an "occurrence," and found that to satisfy these terms and implicate coverage, the insured's acts must be unintended. Architex, 27 So.3d at 1158-59, discussing United States Fidelity & Guarantee Co. v. Omnibank, 812 So.2d 196, 197, 201-02 (Miss. 2002).[14]

Applying the "occurrence" language in section I-1.b.(1) and the policies' definition of an "accident," Starr argues that because the arbitrator found the basis for CMP's liability was breach of warranty, a theory of liability which encompasses intentional conduct, there was no "occurrence" and coverage was not triggered. Starr relies on various cases to support its position, primarily Accident Insurance Co. v. Byrd, 2013 WL 5445396 (S.D. Miss. Sept. 30, 2013), and National Builders and Contractors Ins. Co. v. Slocum, 2011 WL 3157209 (S.D. Miss. July 26, 2011).

Cushing argues that Starr mis-reads section I-1.b.(1). Cushing argues that section I-1.b.(1) asks whether the property damage, *i.e*. the damage to the hotel from water infiltration,[15] was caused by an "occurrence." Cushing argues that although the arbitrator based his award on a breach of warranty theory, the underlying property damage was caused by an "occurrence," specifically, an unintentional leak in the filler pipe to the pool, as revealed by facts found by the arbitrator. Thus, Cushing argues that section I-1.b.(1) is satisfied. Cushing also argues that the

---

[13] Architex considered "the limited and narrow question of: Whether the circuit court erred in concluding, as a matter of law, that the intentional act of hiring subcontractors by the insured general contractor precludes the possibility of coverage." 27 So.3d 1148, 1154.

[14] The meaning of "accident" under Oklahoma insurance law is similar. *See*, United States Fidelity & Guaranty Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1951) ("an accident" is an unexpected happening).

[15] "Property damage," as defined in the policies, means "physical injury to tangible property, including all resulting loss of use of that property." Doc. no. 32-6 at PL0089.

warranty in question promised the work would be "free from defect," so that the arbitrator's finding of breach of warranty necessarily rests on an implicit finding of simple negligence.[16]  Cushing argues that simple negligence is an unintentional act which satisfies the definition of "accident' and constitutes an "occurrence."  Cushing also points out that there is nothing inconsistent between a finding of negligence and a finding of breach of warranty.

The court begins with Starr's cases.  Byrd and Slocum (both of which post-date Architex, a case on which Cushing relies) apply Mississippi law.  Critically, the policies in issue in Byrd and Slocum included coverage language which matches that found in section I-1.(b)(1) of the Starr policies.  The policies involved in Byrd and Slocum also defined "occurrence" in the same way the Starr policies do.

In Byrd,[17] the insurance company sought declaratory relief regarding its obligations under an insurance policy it issued to BBH Construction, Inc.  The insurer claimed it had no duty to defend or indemnify BBH in a pending state-court lawsuit.  In the state-court suit, the Byrds alleged various theories of liability against BBH, including that BBH had breached its contractual obligations by failing to properly find and repair a leak as required under a homeowners' agreement.  Byrd found no obligation on the insurer's part to defend or indemnify the Byrds on the state-court breach of contract claims, stating as follows.

> Mississippi courts have found that claims for recovery that sound in contract allege intentional violations of contractual obligations. Thus, there can be no "occurrence" because "breach of contract actions do not result from accidental losses."

---

[16]While not all defective work is the result of simple negligence, Cushing argues there is no evidence of gross negligence or intentionally inadequate work.

[17]Byrd adopted the Report and Recommendation of the magistrate judge, which granted summary judgment to the insurer.

<u>Byrd,</u> 2013 WL 5445396 at *9, quoting <u>Mendrop v. Shelter Mutual Insurance Co.,</u> 2007 WL 4200827 at *8 (N.D. Miss. 2007).  <u>Mendrop</u> (which preceded <u>Architex</u>) held that "The Shelter policy … affords no coverage, thereby absolving the insurer of any duty to provide the Mendrops with a defense against such claims in the underlying action."  2007 WL 4200827 at *8.

In <u>Slocum</u>, the court stated as follows.

> It is clear from the allegations of Peterson's state court Complaint that the alleged failure of Slocum to build the house in accordance with the contract and its warranty obligations was conscious and deliberate—not inadvertent or by mistake.  The allegations made by Peterson against Slocum do not qualify as "accidents" under Mississippi law.  <u>Thus, Peterson's breach of contract and warranty claims do not allege an "occurrence" under the … policy.</u>

<u>Slocum</u>, 2011 WL 3157209 at *7 (citations omitted, emphasis added).  The court held the insurer owed neither coverage nor a duty to defend.  <i>Id</i>. at *9.

<u>Byrd</u>, <u>Mendrop</u> and <u>Slocum</u> establish that when the underlying claims are for breach of warranty, the insurer has no obligation to indemnify <u>or even defend</u> under a CGL policy which includes the type of "occurrence" language found in section I-1.b.(1) of the Starr policies.

In this action it is not the duty to defend but the <u>narrower</u> duty to indemnify that is in issue—a duty which turns not on claims or allegations (which control the duty to defend) but "<u>on the actual facts giving rise to liability</u> in the underlying suits, and whether any damages caused by the insured and later proven at trial are covered by the policy."  <u>Bradley</u>, 647 F.3d at 531 (emphasis added).  Here, "the actual facts giving rise to liability" in the underlying arbitration are the arbitrator's findings: about the warranty given by CMP; about compliance with time limits for asserting a claim under the construction contract; and about CMP's cessation of efforts to fix the water intrusion problems, which the arbitrator found was likely a result of the

fact that CMP had been dissolved as a corporate entity and was no longer doing business after 2016.

The thing to remember is that the policy provides insurance to <u>CMP</u>, to indemnify CMP against <u>liability</u> (defined as "those sums that [CMP] becomes <u>legally obligated to pay as damages</u>"[18]) for covered losses.  The liability adjudicated against CMP by the arbitrator arose from the breach of warranty adjudicated by the arbitrator.  The fact that this is a CGL policy, insuring against liability, leads to the conclusion that the issue of whether there was a covered loss is coextensive with the arbitrator's adjudication of liability.  CMP, the indemnitee under the policy, is off the hook for every species of liability other than liability for breach of warranty.  If the indemnitee is off the hook for every species of liability other than liability for breach of warranty, then the  insurer is off the hook because breach of warranty is not covered.

<u>Architex</u>, a case on which Cushing relies, does not change the court's conclusion in this regard.  <u>Architex</u>, which addressed the same type of "occurrence" language in a CGL policy that is found in the Starr policies (and in the policies addressed in <u>Byrd</u> and <u>Slocum</u>), requires an analysis of the facts specific to each case, rather than a categorical approach, to determine whether the conduct in question constitutes an "occurrence."  27 So. 3d 1148, 1161.  <u>Architex</u>, however, says nothing about the need for that type of fact-by-fact analysis when the question is limited to indemnification, and when the nature of the underlying liability has already been fixed, as it has been here, on breach of warranty, a theory of liability which rests on intentional conduct by the insured.[19]

---

[18] *See*, section I-1.a., doc. no. 32-6 at PL0075.

[19] Facts found by the arbitrator show the breach of warranty which occurred in this case was based on an intentional act.  CMP stopped its efforts to fix the water infiltration problem at the hotel, thereby breaching its warranty.

Moreover, even if the holding in <u>Architex</u> were expanded to require a fact-based inquiry <u>after liability in the underlying action has been fixed on breach of warranty</u>, <u>Architex</u> indicates that the Mississippi Supreme Court, if faced with the facts of this case, would find in favor of Starr.  <u>Architex</u> states that "an interpretation of the policy which views the term 'occurrence' categorically to preclude coverage for the simple negligence of a subcontractor subverts the plain language and purpose of the CGL part of these policies."  27 So.3d 1148, 1161.  But near the end of the opinion, <u>Architex</u> sets out a caveat to this rule.  <u>Architex</u> states that "occurrence" should not be construed to (categorically) preclude coverage resulting from negligent acts or conduct of a subcontractor "<u>unless</u> otherwise excluded or <u>the insured breaches its duties after loss</u>." *Id*. at 1162.  That is what happened here.  Thus, even if the underlying facts of this case point to simple negligence as the cause of the property damage as Cushing contends, <u>Architex</u> indicates that given CMP's subsequent breach of warranty (when CMP stopped trying to address the hotel's water infiltration problems), the Mississippi Supreme Court would hold that Starr has no duty to indemnify under section I-1.b.(1).

The court also rejects Cushing's argument that the "heart" of CMP's breach of warranty liability is necessarily negligence.  First, the caveat in <u>Architex</u> (a categorical denial of coverage is not appropriate "unless the insured breaches its duties after the loss") trumps this negligence argument and is dispositive.  Second, the arbitration report <u>explicitly</u> stops short of finding negligence.  For example, the arbitrator found that "Proof of negligence is unnecessary to establish liability for breach of warranty."  Doc. no 32-2, ¶ 53.  He also stated that "the negligence of MG Pools and CMP <u>may</u> very well have caused the problem….", but he goes no farther than that.  *Id*. (emphasis added). *Id*.

For all of these reasons, the court finds and concludes that Starr has no obligation to indemnify CMP or to pay any part of the judgment held by Cushing.

It is not clear whether the result would be different if Oklahoma law were applied to the Starr policies. In <u>VBF, Inc. v. Chubb Group of Insurance Companies</u>, 263 F.3d 1226 (10th Cir. 2001), the court of appeals, applying Oklahoma law, held that phrases in insurance policies which provide that the insurer will pay damages the insured becomes "legally obligated to pay" refer only to tort claims and not to contract claims. *Id*. at 1231.[20] The Starr policies, at section I-1.a., include basically the same language. *See*, doc. no. 32-6 at PL0075.[21] Starr makes no arguments under section I-1.a. of its policies. The court simply notes the possibility that if Oklahoma law holds such language provides coverage only for tort claims and not for contact claims, then Cushing may have fared no better under Oklahoma law than it has fared here under Mississippi law, given the arbitrator's conclusion that CMP's liability is based on breach of warranty, which is a contractual obligation.

Starr's Argument for No Coverage Under

The "Continuous or Progressive Injury and Damage Exclusion"

Starr makes additional arguments intended to show it owes nothing on the judgment entered in state court. This order will address just one of these additional arguments.

Starr argues that it has no obligation under the 2013-2014 or 2014-2015 policies based on the "continuous or progressive injury and damage exclusion."

---

[20]In addition to Oklahoma cases, <u>VBF</u> cites <u>Action Ads, Inc. v. Great American Ins. Co.</u>, 685 P.2d 42, 42-45 (Wyo. 1984), for this rule. <u>Action Ads</u> explains that policy language promising to pay all sums which the insured shall become legally obligated to pay as damages, limits the insurer's obligation by excluding "the concept of liability which the insured may have voluntarily assumed." <u>Action Ads</u>, 685 P.2d at 44-45 (quoting treatise). <u>Action Ads</u> concluded that "the coverage clause at issue in the present case encompasses liability which the law imposes on all insureds for their tortious conduct <u>and not on the liability which a particular insured may choose to assume pursuant to contract</u>." *Id*. at 45 (emphasis added).

[21] Section I-1.a. provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Doc. no. 32-6 at PL0075.

(Starr does not press this exclusion with respect to the 2012-2013 policy.)  Cushing argues that the exclusion does not apply for various reasons.  It argues, for example, that not all of the property damages were caused by the same problem, as the arbitrator blamed 5% of the moisture on sources other than the pool.  Cushing also argues that the nature of the property damage changed over time.

The "continuous or progressive injury and damage exclusion" provides as follows.

> A.  This insurance does not apply to any damages because of or related to "bodily injury" or "property damage":
>
>> 1.  Which first existed, or alleged to have first existed, prior to the inception date of this policy; or
>>
>> 2.  Which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or
>>
>> 3.  Which were caused, or are alleged to have been caused, by the same condition or construction defect which resulted in "bodily injury" or "property damage" which first existed prior to the inception date of this policy.

Doc. no. 32-7 at PL0215; doc. no. 32-8 at PL0298.  Thus, the exclusion applies to "any damages…related to…property damage" so long as at least one of the subsections is satisfied.

The damages awarded by the arbitrator and confirmed in the judgment entered in state court are "any damages…related to…property damage" to the hotel.  Thus, the only question is whether one or more of the subjections is satisfied.  Tracking these subsections, the court finds that: 1) the property damage to the hotel first existed prior to the inception dates of the 2013-2014 and 2014-2015 policies; 2) alternatively, the property damage to the hotel was in the process of taking place prior to the inception dates of these two policies even if the property damage

continued during these policy periods; and 3) the property damage to the hotel was caused by the same condition (water infiltration under the slab) which resulted in property damage which first existed prior to the inception dates of these two policies. Thus, one or more of the subsections is satisfied, and the exclusion operates.

As a result, Starr has no obligation under the 2013-2014 or 2014-2015 policies.  This is an alternative basis for the court's conclusion that Starr has no obligations under either of these two policies.

Conclusion

After careful consideration, the court rules as follows.

Starr's motion to strike Cushing's exhibit 11 (doc. no. 31-11) is **DENIED** as **MOOT**.  Doc. no. 36.

Starr's motion to strike certain exhibits (doc. nos. 34-5, 34-6, 34-7) attached to Cushing's response brief is **DENIED** as **MOOT**.  Doc. no. 40.

Cushing's motion to strike Starr's reply brief (doc. no. 39) is **DENIED**.  Doc. no. 42.

Starr's motion for summary judgment is **GRANTED**.  Doc. no. 32.

Cushing's motion for summary judgment is **DENIED**.  Doc. no. 31.

In accordance with these rulings, the court **DECLARES** as follows.

Starr Surplus Lines Insurance Company has no obligation to indemnify CMP Construction, Inc., and no obligation to pay the judgment that was obtained by Cushing Hospitality, LLC, against CMP Construction, Inc., in state court.  The state-court judgment was entered on June 8, 2020, by The District Court of Payne County, State of Oklahoma, in CJ-20-8.  The state-court judgment confirmed an arbitration award in favor of Cushing Hospitality, LLC.  On that basis, the state court awarded judgment to Cushing Hospitality, LLC, in the amount of $1,856,107.65.  For the reasons stated in this order, this federal court has determined and hereby declares

that Starr Surplus Lines Insurance Company has no obligation to pay any portion of that state-court judgment.

IT IS SO ORDERED this 22nd day of March, 2021.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


20-0651p007.docx